1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                * * *

9   THE 24-7 GROUP OF COMPANIES, INC.,    Case No. 3:13-cv-00211-MMD-WGC
    a Nevada corporation,

10

                                Plaintiff,              ORDER

11       v.
                                            (Def's Motion to Dismiss Fourth Claim for
12   TERRY ROBERTS, et al.,                      Relief – dkt. no. 10)

13                            Defendants.

14

15   I.    SUMMARY

16         Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to

17   Dismiss Fourth Claim for Relief Against Wells Fargo Bank, N.A. ("Motion") (dkt. no. 10).

18   The Motion is granted in part and denied in part.

19   II.   BACKGROUND

20         Plaintiff The 24-7 Group of Companies, Inc., filed a First Amended Complaint

21   ("Complaint") in the Second Judicial District Court of the State of Nevada in and for the

22   County of Washoe, and Wells Fargo removed the action to this Court on the basis of

23   diversity jurisdiction. (Dkt. no. 1.)

24         The Complaint alleges the following. Plaintiff operates an auto parts distribution

25   business and hired Defendant Terry Roberts as an independent contractor. Mr. Roberts'

26   wife Melanie Roberts, who was never employed by Plaintiff, delivered a request for credit

27   on behalf of Plaintiff to Williams Scotsman, a California company. Mrs. Roberts falsely

28   identified herself as Plaintiff's bookkeeper in the request for credit, which she signed. Mr.

1   Roberts executed a lease agreement with Williams Sctosman for the rental of a mobile

2   office and named Plaintiff as the lessee. Mr. Roberts signed the lease agreement as

3   "Director Authorized Representative." Mr. Roberts was not authorized to execute this

4   lease agreement on behalf of Plaintiff.

5          Mr. and Mrs. Roberts ("Individual Defendants") opened a bank account in

6   Plaintiff's name at Wells Fargo. They "conducted business in the name of [Plaintiff] from

7   this account, paying Williams Scotsman, and possibly others, from this account." (Dkt.

8   no. 1, Ex. A at 3 ¶18.) Wells Fargo's policies require several documents to be provided

9   in order for an individual to open a business bank account for a corporation, including

10   Articles of Incorporation and a Corporate Resolution. (Dkt. no. 1, Ex. A at 3 ¶19; dkt. no.

11   11, Ex. 1.) The Articles of Incorporation provided by Individual Defendants to Wells

12   Fargo in their account application do not list their names or grant them authority to open

13   an account on behalf of Plaintiff, and no Corporate Resolution was provided or verified.

14   (Dkt. no. 1, Ex. A at 3–4 ¶21; dkt. no. 11, Exs. 2, 3.) Plaintiff did not authorize Individual

15   Defendants to "open bank accounts, sign checks, deposit funds, or in any other manner

16   conduct financial transactions" on Plaintiff's behalf. (Dkt. no. 1, Ex. A at 4 ¶22.)

17          The Complaint alleges claims for intentional interference with prospective

18   economic advantage, constructive fraud and constructive trust against the Individual

19   Defendants. The Complaint's Fourth Claim for Relief asserts negligence and violation of

20   NRS 104.3405 against Wells Fargo. Wells Fargo now moves to dismiss the Fourth Claim

21   for Relief under Fed. R. Civ. P. 12(b)(6). The Individual Defendants filed a joinder to the

22   Motion. (Dkt. no. 16.) Plaintiff opposed the Motion (dkt. no. 11) and Wells Fargo replied

23   (dkt. no. 14.)

24   **III.   DISCUSSION**

25          The Complaint's Fourth Claim for Relief contains two claims: (1) violation of NRS

26   104.3405, which is Nevada's version of the Uniform Commercial Code ("UCC") section

27   ///

28   ///

1  3-405; and (2) common law negligence.[1] Wells Fargo moves to dismiss the former claim

2  on grounds that the Complaint does not sufficiently allege a violation of NRS 104.3405,

3  and the latter claim on grounds that it is barred by the economic loss doctrine. The Court

4  agrees that Plaintiff has failed to state a claim under NRS 104.3405 but finds that

5  Plaintiff's claim for common law negligence is not barred by the economic loss doctrine.

6  **A.    Legal Standard**

7  A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

8  relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide

9  "a short and plain statement of the claim showing that the pleader is entitled to relief."

10  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While

11  Rule 8 does not require detailed factual allegations, it demands more than "labels and

12  conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*

13  *Iqbal*, 556 US 662, 678 (2009) (*citing* Papasan v. Allain, 478 U.S. 265, 286 (1986)).

14  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

15  U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient

16  factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

17  678 (internal citation omitted).

18  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

19  apply when considering motions to dismiss.  First, a district court must accept as true all

20  well-pled factual allegations in the complaint; however, legal conclusions are not entitled

21  to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a

22  cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

23  Second, a district court must consider whether the factual allegations in the complaint

24  allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the

25  ──────────────

26  [1]The Fourth Claim for Relief is subtitled "Breach of Duty/Negligence/Violation of NRS 104.345 and UCC 3-405 – Wells Fargo." (Dkt. no. 1, Ex. A at 6.) The Motion treats this as two claims, combining "Breach of Duty/Negligence" into a common law

27  negligence claim, and treating "Violation of NRS 104.345 and UCC 3-405" as one claim for violation of NRS 104.3405, which is adapted from the UCC provision. Plaintiff does

28  not object to this categorization.

plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**B.    Analysis**

**1.    NRS 104.3405**

NRS 104.3405 addresses the responsibilities for "fraudulent endorsement by an employee." There is little case law in Nevada interpreting the statute but under the statute's plain language, a party that, "in good faith, pays an instrument or takes it for value or for collection" can be held liable for the monetary loss suffered if: (1) "an employer entrusted an employee with responsibility with respect to the instrument;" (2) "the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument;" (3) "the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument;" and (4) "that failure substantially contributes to loss resulting from the fraud." NRS 104.3405(2). The Complaint fails to allege facts that support each of the required elements.

As to the first element, "[r]esponsibility with respect to the instrument" is defined as the authority:

    (1) To sign or endorse instruments on behalf of the employer;
    (2) To act upon instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition;
    (3) To prepare or act upon instruments for issue in the name of the employer;

(4) To supply information determining the names or addresses of payees of instruments to be issued in the name of the employer;
(5) To control the disposition of instruments to be issued in the name of the employer; or
(6) To act otherwise with respect to instruments in a responsible capacity.

NRS 104.3405(c). "'Responsibility' does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access." *Id.*

The Complaint does not allege that either of the Individual Defendants was entrusted with the required responsibility. Mrs. Roberts was never employed by Plaintiff. (Dkt. no. 1, Ex. A at 2 ¶9.) Mr. Roberts was hired as an independent contractor but the Complaint's only allegations as to Mr. Robert's responsibilities are that he was hired "to perform specific limited duties for the company" (*id.* at 2 ¶8), that he was not authorized to execute the lease agreement with Williams Scotsman (*id.* at 3 ¶16), and that he, and Mrs. Roberts, were not authorized to "open bank accounts, sign checks, deposit funds, or in any other manner conduct financial transactions" on Plaintiff's behalf (*id.* at 4 ¶22). Examining the Complaint's allegations in the light most favorable to Plaintiff, the Court cannot conclude that either Mr. Roberts or Mrs. Roberts had "responsibility" as it is defined in NRS 104.3405(c).

Plaintiff argues in its Opposition that Comment 4 to NRS 104.3405 "deals with the exact misconduct Wells Fargo has displayed here" but that fact, even if true, is not relevant to the Complaint's deficiencies. Comment 4 deals with the hypothetical titled "Case #5" in Comment 3. *See* NRS 104.3405, cmt. 3. In that hypothetical, "Employee is an accounts payable clerk whose duties include entering information into the computer" that "controls Employer's check-writing machine." *Id.* Employee's scheme is to take a check made out by Employer to a well-known national corporation, open a bank account in the name of said corporation, deposit the check in the account and, when the funds clear, wire the money to Employee's own private account overseas. *See* NRS 104.3405, cmt. 4. The critical distinction between this hypothetical scenario and the case before the

1   Court is that Employee had "responsibility" under NRS 104.3405(c) as an accounts

2   payable clerk with access to Employer's check-writing machine. The Court cannot draw

3   a reasonable inference that either of the Individual Defendants had similar

4   responsibilities.[2]

5          As The Complaint fails to allege the material element of "responsibility," the Court

6   need not continue its analysis of the remaining elements. Plaintiff's NRS 104.3405 claim

7   will be dismissed.[3]

8                    **2.     Common Law Negligence**

9          Wells Fargo argues that Plaintiff may not recover economic losses under its claim

10  for negligence. The Motion asserts that "[u]nder Nevada law, economic losses are not

11  recoverable in negligence absent personal injury or damage to property other than the

12  defective entity itself." (Dkt. no. 10 at 6 (citing *Calloway v. City of Reno*, 993 P.2d 1259,

13  1263 (Nev. 2000).) Plaintiff counters that it merely seeks compensation for its damaged

14  property. Specifically, the money Plaintiff lost from the "checks drawn and processed by

15  Wells Fargo through the unauthorized fraudulent accounts." (Dkt. no. 13.) The Court

16  finds that Plaintiff may bring a common law negligence claim against Wells Fargo for

17  monetary damages in the amount taken from Plaintiff as a result of Wells Fargo's alleged

18  negligence.

19         "The economic loss doctrine is a judicially created rule that primarily emanates

20  from products liability jurisprudence." *Terracon Consultants W., Inc. v. Mandalay Resort*

21  *Grp*, 206 P.3d 81, 85–86 (Nev. 2009) (citing *Calloway*, 993 P.2d at 1263 (overruled on

22  _____

23         [2]Plaintiff's Opposition states that "in his capacity as in independent contractor with [Plaintiff], it appears Mr. Roberts would obtain checks made payable to Plaintiff from various customers. He opened the unauthorized Wells Fargo accounts and deposited

24  various checks into the accounts and this was accomplished without Plaintiff's knowledge, consent or ratification." (Dkt. no. 11 at 8.) While these facts may suggest that

25  Mr. Roberts could have had "responsibility" as that term is defined in NRS 104.3405(c), they are absent from the Complaint. The Court will therefore not consider them as part of

26  its analysis as Plaintiff may not cure defects in the Complaint through its Opposition.

27         [3]Wells Fargo argues that Plaintiff's NRS 104.3405 claim displaces Plaintiff's common law negligence claim. (Dkt. no. 10 at 5.) Because Plaintiff's NRS 104.3405

28  claim is being dismissed, the Court need not address this argument.

1    other grounds by *Olson v. Richard*, 120 Nev. 240, 89 P.3d 31 (Nev.2004) (en banc)).

2    The Nevada Supreme Court explained that "[t]he economic loss doctrine marks the

3    fundamental boundary between contract law, which is designed to enforce the

4    expectancy interests of the parties, and tort law, which imposes a duty of reasonable

5    care and thereby [generally] encourages citizens to avoid causing physical harm to

6    others." *Terracon*, 206 P.3d at 86 (quotation and citations omitted). The general rule is

7    that the doctrine "bars unintentional tort actions when the plaintiff seeks to recover

8    'purely economic losses.'" *Id.* The reason for the doctrine is "to shield a defendant from

9    unlimited liability for all of the economic consequences of a negligent act, particularly in a

10   commercial or professional setting, and thus to keep the risk of liability reasonably

11   calculable." *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No.*

12   *226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982). "The foreseeability of economic loss, even

13   when modified by other factors, is a standard that sweeps too broadly in a professional

14   or commercial context, portending liability that is socially harmful in its potential scope

15   and uncertainty." *Id.*

16         Thus, there is a two-step process in determining whether the economic loss

17   doctrine bars a plaintiff's claim. *See Copper Sands Homeowners Ass'n, Inc. v. Copper*

18   *Sands Realty, LLC*, 2:10-cv-00510, 2012 WL 1044311, at *4 (D. Nev. Mar. 27, 2012).

19   The first step is to determine whether Plaintiff seeks "purely economic losses." *See id.*

20   (*citing Terracon*, 206 P.3d at 86.) If the damages are purely economic in nature, the

21   second step is to identify whether the claim is of a type that has historically been found

22   to be barred by the economic loss doctrine. *See Copper Sands*, 2012 WL 1044311 at

23   *4–5. The economic loss doctrine does not "bar the recovery of

24   purely economic losses when the defendant intentionally breaches a duty that is

25   imposed independently of the obligations arising from contract." *Davis v. Beling*, 278

26   P.3d 501, 514 (Nev. 2012). Some examples of situations where courts have allowed

27   recovery of "purely economic losses" include "negligent misrepresentation and

28   ///

7

1   professional negligence actions against attorneys, accountants, real estate

2   professionals, and insurance brokers." *Terracon*, 206 P.3d at 87 (listing cases).

3         The Nevada Supreme Court has provided guidance on what constitutes "purely

4   economic loss." "Purely economic loss" is defined as "the loss of the benefit of the user's

5   bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and

6   replacement of the defective product, or consequent loss of profits, without any claim of

7   personal injury or damage to other property." *Terracon*, 206 P.3d at 83 (*citing Calloway*,

8   993 P.2d at 1263 (*quoting* American Law of Products Liability (3d) § 60:36, at 66

9   (1991))). Outside of the product liability context, the Nevada Supreme Court cases

10  applying the economic loss doctrine have done so primarily in the professional services

11  context. *See, e.g., Terracon*, 206 P.3d at 83–84 (property owner claimed that

12  engineering and architectural firms provided negligent design advice relied upon in

13  making improvements to commercial property, and asserted that the resulting foundation

14  problems caused economic loss and fees); *Calloway*, 993 P.2d at 1269 (homeowners

15  claimed that construction companies negligently designed townhomes with defective

16  framing, causing homeowners to "fail to receive benefit of their bargains" and a "lower

17  quality of standard than expected"); *Stern*, 651 P.2d at 637-38 (employees of a hotel at

18  the time of a fire brought claims against construction companies alleging negligence and

19  seeking to recover lost salaries and employment benefits). These cases found that

20  plaintiffs sought to recover "purely economic loss" where they asked for monetary

21  damages to compensate for decrease in value, costly repairs and fees or lost profits. A

22  large part of the rationale for restricting these kinds of claims in tort is that, in the context

23  of commercial activity, "contract law can be invoked to enforce the quality expectations

24  derived from the parties' agreement." *Terracon*, 206 P.3d at 87 (*citing Calloway*, 993

25  P.2d at 1265-66).

26        Plaintiff does not seek to recover "purely economic loss." As alleged in the

27  Complaint, the Individual Defendants opened a bank account at Wells Fargo in Plaintiff's

28  name and paid others from this account, causing significant monetary loss. (Dkt. no. 1,

8

Ex. A at 3 ¶18, 7 ¶49.) As Plaintiff points out in the Opposition, they seek damages equal to the amount allegedly stolen through the fraudulent account. (Dkt. no. 11 at 13.) There is no indication that Plaintiff seeks diminution in value, costly repairs, fees or lost profits from Wells Fargo. Unlimited liability for all of the economic consequences of Wells Fargo's allegedly negligent actions is thus not an issue here because the amount taken from Plaintiff is "reasonably calculable." *Stern*, 651 P.2dat 638. Unlike defective products or negligent construction, which can continue to cause economic damages to countless businesses and individuals even after the construction or product is fixed or replaced, the harms caused by negligent actions such as those alleged in the Complaint are clear and immediate. As soon as the fraud is discovered and the account is closed, the loss of money stops and can be calculated.

The goal of the economic loss doctrine is to ensure that negligent parties are not faced with endless economic liability for their negligent acts. But that problem is not present in this case where Plaintiff seeks compensation for a quantifiable amount of personal property (i.e., a specific sum of money) that was actually taken from its possession. The Court is not aware of any Nevada case law to the contrary.[4]

In *Calloway*, the Nevada Supreme Court found that "the overriding policy of tort law, to promote safety" is not implicated in a suit brought by homeowners against

---

[4]*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183 (M.D. Pa. 2005), which Wells Fargo offers as an example of a case in which the economic loss doctrine is applied in the banking context, is not applicable to this case. In *Sovereign*, Sovereign Bank brought an action against a restaurant and the bank that processes credit cards for the restaurant where the restaurant allegedly negligently allowed their computer system to be hacked. 395 F. Supp. 2d at 187. Credit cards were stolen belonging to Sovereign Bank's customers and Sovereign Bank sued to recover the costs of replacing the stolen cards and reimbursing the cardholders. *Id.* The court allowed the negligence claim against the restaurant to proceed but held that Sovereign Bank's negligence claim against the bank was barred by the economic loss doctrine. *Id.* at 203-04. Claims for cost of repair and replacement are characteristic of recovery for "purely economic loss." *See Calloway*, 993 P.2d at 1263. The court in *Sovereign* emphasized that it was the "context in which [Sovereign Bank] lost its money, payment for replacement cards and reimbursement for unauthorized charges" that lead the court to conclude it suffered "purely economic loss." 395 F. Supp. 2d at 204. Cost of repair and replacement damages are not at issue in this case. Unlike Sovereign Bank, Plaintiff had a set amount of its own money taken from its possession and Plaintiff can be compensated and made whole.

1  construction companies alleging negligently designed townhomes with defective framing.

2  993 P.2d at 1269. However, the plaintiffs in *Calloway* had contractual remedies to

3  recover their losses. *Id.* at 1262. The court in *Calloway* noted that contract law, as

4  opposed to tort law, "is designed to enforce the expectancy interests created by

5  agreement between the parties and seeks to enforce standards of quality" and the

6  "standard of quality must be defined by reference to that which the parties have agreed

7  upon." 993 P.2d at 1265. Unlike *Calloway*, this is not a case of economic expectancies.

8  Plaintiff in this case apparently had no contractual relationship with Wells Fargo. Nor did

9  the Plaintiff willingly avail itself of any of Wells Fargo's products and services. Plaintiff

10 was never in a position to contract against this loss because the account was opened

11 without Plaintiff's knowledge. Plaintiff's common law negligence allegations are thus

12 well-suited for tort law, as opposed to contract law.

13       Examining the Complaint's allegations in the light most favorable to the Plaintiff,

14 the Court concludes that Plaintiff's common law negligence claim is not barred by the

15 economic loss doctrine.

16              **3.    Leave to Amend**

17       Plaintiff asks the Court to grant leave to amend the Complaint in the event the

18 Court decides to dismiss any of its claims. (Dkt. no. 11 at 14.) Generally, "[d]ismissal

19 without leave to amend is improper unless it is clear, upon de novo review, that the

20 complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893,

21 898 (9th Cir. 2002) (quotation omitted). Wells Fargo argues that amendment of Plaintiff's

22 NRS 104.3405 claim would be futile because the Complaint states that the Individual

23 Defendants were not authorized to "open bank accounts, sign checks, deposit funds, or

24 in any other manner conduct financial transactions" on Plaintiff's behalf. (Dkt. no. 1, Ex.

25 A at 4 ¶22.) The Court disagrees. By the plain language of the statute, "responsibility"

26 under NRS 104.305(c) may be sufficiently alleged even where an employee does not

27 have the authority to "open bank accounts, sign checks, deposit funds, or in any other

28 manner conduct financial transactions." As the Complaint has not yet been amended in

this Court, and good cause appearing, Plaintiff is permitted to file an amended complaint to cure the deficiencies of its allegations.

**IV.    CONCLUSION**

It is therefore ordered that Defendant Wells Fargo's Motion to Dismiss Fourth Claim for Relief (dkt. no. 10) is granted in part and denied in part. Plaintiff's claim under NRS 104.3405, asserted as the "Fourth Claim for Relief," is dismissed without prejudice. Plaintiff's common law negligence claim, also asserted as the "Fourth Claim for Relief" remains. Plaintiff may file an amended complaint within fourteen (14) days of this Order.

DATED THIS 13th day of January 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE